**City of Rockford, Illinois, a Municipal Corporation, Plaintiff-Appellee, v. Mrs. Marguerite Eisenstein, Defendant-Appellant.**

**Gen. No. 65–27–M.**

Second District.

October 25, 1965.

Reno, Zahm, Folgate & Skolrood, of Rockford (Robert K. Skolrood, of counsel), for appellant.

William E. Collins, Corporation Counsel, of Rockford (John W. Nielsen, of counsel), for appellee.

ABRAHAMSON, P. J.

This is an appeal from the finding of a police magistrate of the City of Rockford against the defendant when she was found guilty of the charge and fined $100.

The action against the defendant was brought on by the City of Rockford by the complaint signed by a James Quinn charging the defendant with a violation of the city zoning ordinance, in that she operated a

dancing school in the basement of her home in the area designated "A" residential. It appears that for some 24 years the defendant had instructed dancing classes at a former residence in Rockford under the name of Lund School of Dancing. In the fall of 1964 Mrs. Eisenstein moved to her present address in a residential section of Rockford consisting mainly of ranch type homes. In October of 1964 the defendant hired a contractor to remodel a portion of the basement of her home. No permit was secured. After a complaint was made to the building inspector, he issued a permit to finish the basement "for a family recreation room— not to be used as a dancing school." When the remodeling was completed, the defendant commenced giving instructions in dancing.

All the witnesses produced by the city, including the complainant, James Quinn, indicated, and it was so stipulated by counsel for the City of Rockford, that the only annoyance caused by the dancing classes was the increased amount of traffic in the neighborhood. Mrs. Eisenstein had no one working for her and she did not display any signs on the premises. The only piece of equipment that was used was a hi-fi recorder on which music was played during the periods of instruction. No classes were conducted on the ground floor of the ranch style home. There were no sales of any kind made out of the home, other than if once the dancing season began, leotards and dancing costumes were not available from the local stores, Mrs. Eisenstein furnished a catalog from which such items could be selected and ordered. Mrs. Eisenstein conducted from 1 to 5 classes a day, Monday through Saturday, from approximately September through May of each year, and the number of students varied from 2 to 8 in each class.

The sole question presented in this case is whether these dancing classes held in Mrs. Eisenstein's home

constituted a home occupation within the meaning of the phrase as used in Section 7, Chapter 44 of the Ordinances of the City of Rockford. That Ordinance provided as follows:

"In any 'A' residence district, except as hereinafter provided, no building or premises shall be used and no building shall be erected or altered except for one or more of the following uses:

 (1) Single family dwellings.

 (2) Parks, recreation buildings, and country clubs not conducted as a business nor for profit.

 (3) Temporary buildings and uses for construction purposes for a period not to exceed one year.

 (4) Accessory uses incident to the above uses, including private garages, professional offices, home occupations and signs advertising premises for sale or rent, but not the conduct of any retail or wholesale business or manufacture.

Nowhere does it define in the Ordinance what a 'home occupation' is."

Section 44–10 of the Rockford Code, entitled "local business districts," states:

"IN any local business district . . . no building or premises shall be used . . . except for one or more of the following uses:

 (13) Dancing academies . . .

 (43) Studios . . ."

Within the meaning of the ordinance, both the city and the defendant agree that there is only one case in the state of Illinois in which the court has been called upon to interpret the meaning of a comparable or

similar phrase. In Village of Riverside v. Kuhne, 335 Ill App 547, 82 NE2d 500, a real estate broker conducted his real estate brokerage business from his home. His wife did his typing and helped with the office work. He advertised in the local community newspapers. He placed a pair of signs in trees in front of his house, the upper sign containing "Real Estate Broker" in large letters and the lower sign reading "Eugen Kuhne" with "Exclusive broker" written under it. In holding that defendant had violated the Riverside Zoning Ordinance, the court first determined that a real estate brokerage is not a home occupation. At p 560 the court stated:

. . . "real estate agencies are no more professions than any other business agencies. Neither is defendant's real estate business a 'home occupation' of the kind permitted by the zoning ordinance. Provisions of zoning ordinances similar to those in Riverside relate to professional offices and home occupations such as that of doctors, and are commented upon and construed in Bassett's Zoning (Russell Sage Foundation Edition, 1936, pp 100, 101) as follows: 'During the formative period of comprehensive zoning it became evident that districts could not be confined to principal uses only. It had always been customary for occupants of homes to carry on gainful employments as something accessory and incidental to the residence use. The doctor, dentist, lawyer, or notary had from time immemorial used his own home for his office. Similarly the dressmaker, milliner, and music teacher worked in her own home. The earliest zoning ordinances took communities as they existed and did not try to prevent customary practices that met with no objection from the community. . . . The accessory use must not be a business. A real estate office or a plumbing shop would be so regarded.' Counsel for plaintiff argue with considerable force that if an otherwise permissible

131

occupation results in repeated sales of goods or is accompanied by an advertising sign publicly inviting customers to resort to the house for business purposes, the use is no longer a semiprivate one confined to the home, but becomes a public business incompatible with a residence district; and a multiplication of such uses would result in all the detrimental effects on property values in the neighborhood that the zoning ordinance is designed to prevent." Beyond this single decision both parties turn to decisions of other jurisdictions and assert that these decisions tend to support their respective positions.

In the case of State ex rel. Kaegel v. Holecamp, 151 SW2d 685, Mo App, the defendant attempted to remodel the first floor of his three story residence for use as a dancing school. His wife was to be assisted by her sister-in-law on the piano. The sister-in-law resided in the home during the week and returned to her home on weekends. The court in finding a violation of the zoning ordinance held that the use of the premises as a place for giving instructions in dancing to a large number of students who attended regular classes conducted from early morning until late at night, was under the circumstances not an incident to the use of the premises for home purposes. The court found that the use of the premises was primarily commercial and bore no relation whatever to any usual and ordinary home purpose. It should be noted that the zoning ordinance before the court in that case made specific provision for the locations of dancing schools under another classification.

In the case of Delpriore v. Ball, 281 App Div 214, 118 NYS2d 53, affd 306 NY 775, 118 NE2d 478 (1953), neighbors of defendant complained that the activities incident to conducting a dancing school would cause a deterioration of the neighborhood, and that the in-

creased traffic and parking upon the street would result in a traffic hazard. In that case, the property owner gave dancing instruction lessons to young children individually and in classes not exceeding 10 pupils. The court there found that the advertisement for pupils and the resulting traffic problems did not affect the use of the home and held that the giving of dancing instructions under the circumstances involved was a profession within the meaning of the zoning ordinance.

In Stewart v. Humphries, 55 Ohio App 334, 132 NE2d 758 (1955), an attempt was made by way of injunction to prevent Betsy Anne Humphries from operating a dance studio because "it will greatly increase traffic problems, render driving conditions and pedestrial travel in the vicinity hazardous, adversely affect the living conditions, increase congestion, noise and confusion." After rejecting the rationale of the State ex rel. Kaegel v. Holecamp, supra, the court stated on p 760, NE Reporter:

"And as to the claim in the petition of increased traffic problems, dangerous driving conditions, increased congestion and so forth, it might be suggested that these things do not naturally arise from the conduct of a studio wherein the maximum number of pupils at a given time is 14 children, except on one occasion on Saturday morning when it would be 18 children according to the records heretofore had. And of these children the oldest is 16. Certainly the teaching of them in a building of this kind back from the street and with such a limited number at a given time would be less conducive to noise, congestion and neighborhood disturbance than would be fraternity houses in a college town or a school, public, parochial or private, or even a church."

██ ██ Turning to the particular ordinance before us, we are of the opinion that the giving of instructions

133

in the art of dancing to school-age children by a widow in the basement of her home is as accessory and incidental to the residential use as would be the carrying on of gainful employment as dressmaker, milliner or music teacher working in their own homes. The dancing classes as conducted by Mrs. Eisenstein are certainly not a "business" in the same sense as an Arthur Murray or Fred Astaire franchised studio is a business. We deem it of the utmost significance as to whether the primary use of the premises is residential in character and the occupational use merely incidental thereto, or whether the residential use of the property is merely incidental to its use as a business location. Zoning ordinances are to be strictly construed in favor of the property owner. In Voisard v. County of Lake, 27 Ill App2d 365, 373, 169 NE2d 805, the court stated:

"However, in construing Zoning ordinances, the opposite attains. In 101 CJS Zoning section 129, it is said, 'since zoning laws are in derogation of common law rights to the use of the property, . . . it has been held that they are subject to strict construction in favor of the right of a property owner to the unrestricted use of his property. . . .' "

With that rule in mind, we believe the court below erred in finding Mrs. Eisenstein guilty of violating the zoning ordinance; the judgment of the lower court will therefore be reversed.

Judgment reversed.

DAVIS and MORAN, JJ., concur.