THE CITY OF PEKIN, Plaintiff-Appellant, v. WILLIAM KAMINSKI, Defendant-Appellee.

Third District   No. 3—86—0598

Opinion filed May 21, 1987.

Burt L. Dancey, of Elliff, Keyser, Oberle & Davies, P.C., of Pekin, for appellant.

Kevin Tilton, of Bartonville, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The city of Pekin appeals from judgment entered by the circuit

court of Tazewell County in favor of defendant William Kaminski. In its amended complaint, the city alleged that defendant had refused to obtain a home occupation permit for the conduct of his insurance business in violation of section 401—7(f) of city ordinance No. 1568. Defendant denied the complaint and moved for summary judgment in his favor. In support of his motion, defendant filed a verified statement alleging, *inter alia*: (1) that he had never conducted any insurance business with any persons inside of his home; (2) that he had an insurance office at Town Hall Square in Peoria, where his telephone number was 691-4255; (3) that on a single occasion since April of 1985, when he was employed by Mutual of Omaha Insurance Company, a gentleman had appeared at defendant's residence for a business purpose; (4) that he has never executed any insurance contracts in his home; (5) that he does not maintain files or records of contracts of insurance in his home; (6) that he does not receive payments of premiums for contracts of insurance in his home; (7) that he lists his home address and telephone number in the Central Telephone Company directory for Pekin, Illinois; and (8) that he lists his home telephone number in his television advertisements.

The city, pursuant to the court's instruction, filed in response to defendant's motion a statement signed by Richard Jost, code enforcement officer for Pekin, alleging: (1) that defendant "solicits business at his home" in the yellow pages of the Central Telephone Company directory for Pekin; and (2) that defendant further "solicits business in his home" on Continental Cablevision Channel 11. The matter was heard by the circuit court, and on August 6, 1986, the court granted summary judgment for defendant, finding as a matter of law that no violation of the zoning ordinance had been shown.

■ Summary judgment is properly granted where the evidence, construed most strongly against the moving party, establishes clearly and leaves no doubt that the movant is entitled to such relief. "Where the movant supplies well-pleaded facts in an affidavit in summary judgment which, if not contradicted, would entitle him to judgment, the opposing party cannot rely upon his complaint or answer alone to raise issues of material fact." *Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 502 N.E.2d 1295, 1298.

Article IV of city of Pekin ordinance No. 1568 provides as follows:

> **"Sec. 400. Intent.** The R-1 through R-4 One-Family residential Districts are designed to be the most restrictive of the residential districts. The intent is to provide for an environment of predominantly low density, one-family detached dwellings along with other residentially related facilities which serve the resi-

dents in the district.

Sec. 401. Principal uses permitted: In a One-Family Residential District, no building or land shall be used and no building shall be erected except for one or more of the following specified uses unless otherwise provide [sic] in this Ordinance:

1. One-family detached dwellings.

2. Farms on those parcels of land having an area of not less than five (5) acres, ***.

3. Municipal buildings and uses necessary to service adjacent residential areas, publicly owned and operated libraries, parks, parkways and recreational facilities.

4. Cemeteries.

5. Public, parochial and other private elementary schools offering courses in general education.

6. Accessory buildings and uses, customarily incident to any of the above permitted uses.

7. Home occupations.

a. No home occupation shall be permitted that:

(1) Changes the outside appearance of the dwellings or is visible from the street;

(2) Generates traffic, parking, sewerage or water use in excess of what is normal in the residential neighborhood;

(3) Creates noise, vibration, glare, fumes, odors or results in electrical interference, or becomes a nuisance [sic];

(4) Results in outside storage or display of anything including signs;

(5) Requires the employment of anyone in the home other than the dwelling occupant;

(6) Requires exterior building alterations to accommodate the occupation;

(7) Occupies more than twenty-five (25%) percent of the ground floor area of the dwelling or fifty (50%) percent of the ground floor area of any detached garage; or occupies more than fifty (50%) percent of a basement; and in no instance shall such space in the aggregate exceed Five Hundred (500) square feet of floor space.

(8) Requires parking for customers that cannot be accommodated on the site and/or not exceeding one parking space at curb side on the street;

(9) Requires the delivery of goods or the visit of customers before 7 a.m. and after 9 p.m.

b. The following are permitted home occupations provided

they do not violate any of the provisions of the previous paragraph:

(1) Dressmaking, sewing, or tailoring;

(2) Painting, sculpturing, or writing;

(3) Telephone answering;

(4) Home crafts, such as model making, rug weaving, lapidary work, and cabinet making;

(5) Tutoring, limited to four students at a time;

(6) Home cooking and preserving;

(7) Computer programming;

(8) Salespersons office or home office of a professional person;

(9) Laundering and/or ironing.

(10) Repair of clocks, instruments or other small appliances which do not create a nuisance due to noise, vibration, glare, fumes, odors or results in electrical interference.

c. The following are prohibited as home occupations:

(1) Barber shops and beauty parlors;

(2) Dance studios;

(3) Private clubs;

(4) Repair shops which may create a nuisance due to noice [sic], vibration, glare, fumes, odors or electrical interence [sic];

(5) Restaurants;

(6) Stables or kennels;

(7) Tourist homes;

(8) Automobile repair or paint shops.

d. Any proposed home occupation that is neither specifically permitted by paragraph (b). nor specifically prohibited by paragraph (c). shall be considered a SPECIAL USE and be granted or denied upon consideration of those standards contained in paragraph (a). and under the procedures specified in SECTION 402, SPECIAL USES.

e. Home occupation permits shall be limited to the applicant who legally resides in the residence.

f. Home occupation shall be based on an annual permit for such home occupation, upon such conditions as established from time to time by the Zoning Administrator."

As defined in city of Pekin Zoning Ordinance No. 1488, section 101, "[a] home occupation is an occupation or profession customarily carried on by an occupant of a dwelling unit as a secondary use which is clearly subservient to the use of the dwelling for residential pur-

poses."

The question on appeal is whether the trial court erred in concluding as a matter of law that defendant was not using his residence for a home occupation. Initially, we find that the city's verified statement contains legal conclusions, but does not otherwise rebut defendant's verified statement of facts. Defendant's factual statement, therefore, is deemed admitted and the only issue is whether defendant is entitled to judgment as a matter of law.

As noted by the trial court, "[i]t is common knowledge that a doctor or an attorney or any other professional man is often called at his residence after office hours, whether or not he lists his home phone in the telephone directory or in other professional advertisements. As long as the professional man maintains an independent office to which he can refer clients for further advice, it would be foolish to refuse to carry on a telephone conversation with a client on the basis that the dwelling unit may be considered as housing a 'home occupation.' " The city's attempt to distinguish other professional advertisements is unpersuasive. The mere fact that the specific attorneys cited by defendant listed only their home phone numbers (but not their home addresses) and only in the white pages (but not in the yellow pages) of the telephone directory does not convince us that this defendant's activities thereby constitute a home occupation.

We are not here concerned with a truth-in-advertising issue, nor is the city challenging the professionalism of defendant's advertising policies. Further, defendant's advertisements are not prohibited or otherwise regulated by the zoning ordinance.

What is at issue is a zoning ordinance restricting the use of residential property so as to maintain a primarily low density, noncommercial environment. We note that defendant has not placed a sign on his property advertising his insurance agency in a manner that might affect the character of the residential neighborhood. (See *Village of Riverside v. Kuhne* (1948), 335 Ill. App. 547, 82 N.E.2d 500.) And, it is not alleged that defendant received clients at his home, which might interfere with the peaceful enjoyment of the residential neighborhood. (See *City of Rockford v. Eisenstein* (1965), 63 Ill. App. 2d 128, 211 N.E.2d 130.) As stated in *Eisenstein*, "[z]oning ordinances are to be strictly construed in favor of the property owner. *** '[Z]oning laws are in derogation of common law rights to the use of property, *** they are subject to strict construction in favor of the right of the property owner to the unrestricted use of his property ***.' " 63 Ill. App. 2d 128, 134, 211 N.E.2d 130, 133 (quoting *Voisard v. County of Lake*(1960), 27 Ill. App. 2d 365, 373, 169 N.E.2d 805; 101

C.J.S. *Zoning* sec. 129 (1958)).

■ Where, as here, the unrebutted facts establish that the only arguable basis for the city's complaint is that on a single occasion one individual appeared at defendant's residence for a business purpose, there is no doubt that defendant should not be found in violation of the ordinance in question. Defendant's advertising practices do not require that he obtain a home occupation permit. In sum, defendant was entitled to judgment as a matter of law.

Having determined that summary judgment was properly granted in defendant's favor, we affirm the judgment of the circuit court of Tazewell County.

Affirmed.

HEIPLE and SCOTT, JJ., concur.